# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3461
_____

United States of America

*Plaintiff - Appellee*

v.

Richard Thomas Ball

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: June 10, 2024
Filed: July 5, 2024
[Unpublished]
_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.
_____

PER CURIAM.

Richard Thomas Ball pleaded guilty to a host of serious offenses, including one count of sexual exploitation or attempted sexual exploitation of a child, *see* 18 U.S.C. § 2251(a), (e), and three counts of sex trafficking by force, fraud, and coercion, *see id.* § 1591(a)(1), (b)(1). In addition to imposing a forty-year prison sentence, the

district court[1] ordered Ball to pay $20,000 in certain assessments. Ball maintains on appeal that the court plainly erred in finding him financially able to pay these assessments. We affirm.

The Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA) requires a court to impose an assessment of not more than $50,000 (adjustable for inflation) "on any person convicted of a child pornography production offense." *See id.* § 2259A(a)(3), (b). A "child pornography production offense" includes the sexual-exploitation offense under § 2251 that Ball pleaded guilty to committing. *See id.* § 2259(c)(1). Separately, the Justice for Victims of Trafficking Act (JVTA) provides that, when a defendant is convicted of certain offenses including sex trafficking under § 1591, as Ball was, "the court shall assess an amount of $5,000 on any non-indigent person." *See id.* § 3014(a). Ball bears the burden of proving his indigence. *See United States v. Wesely*, 96 F.4th 1045, 1047 (8th Cir. 2024).

At sentencing, the district court imposed a $5,000 assessment under the AVAA and $15,000 in assessments under the JVTA ($5,000 for each sex-trafficking count). It explained that Ball has forty years in prison to earn the money needed to satisfy the obligations, and he will do so if he earns only about ten dollars per week. It also observed, correctly, that Ball "has been quite successful in the past at manipulating women into" giving him money while he was incarcerated, and should he continue to do so while serving this prison sentence, "that money is going to be siphoned off . . . to pay these assessments." Because Ball did not object to the imposition of the assessments, we review for plain error. *See United States v. Ohlmeier*, 25 F.4th 571, 572–73 (8th Cir. 2022).

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

Ball asserts that the district court mistakenly determined that he could pay the assessments. He notes that unobjected-to portions of his presentence report stated that his net worth is -$21,080.41, and that based on Ball's "present financial status, it appears he is unable to pay a monetary obligation." A defendant's present financial situation, however, is not the only matter a court considers when imposing these kinds of assessments. When determining the amount of an AVAA assessment, courts are directed to weigh several considerations, including the traditional sentencing criteria found in 18 U.S.C. § 3553(a) as well as the criteria under 18 U.S.C. § 3572 that courts consider when imposing fines. *See id.* § 2259A(c). One criterion explicitly contemplates consideration of the defendant's "income, earning capacity, and financial resources," *see id.* § 3572(a)(1), which is precisely what the court did here. Similarly, we've held with respect to the JVTA that it is appropriate for a court in determining a defendant's indigence to consider both "a defendant's current financial situation and his ability to pay in the future." *See United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017). "What matters, in other words, is a defendant's ability to pay, now or later." *Wesely*, 96 F.4th at 1047. The upshot is that we've held that a defendant's slightly negative net worth doesn't automatically render him indigent. *See Kelley*, 861 F.3d at 802; *cf. United States v. Barthman*, 983 F.3d 318, 322 (8th Cir. 2020).

Ball asserts that prison wages are too meager and contributions from others too speculative to support imposition of the assessments. He explains that his weekly wages from prison work would total somewhere between $4.80 and $16, and only part of that money can be used to satisfy financial obligations like these assessments. Even assuming Ball is correct, his argument fails to take into account that even these wages, over time, can make a sizable dent in his financial obligations. It also fails to take into account that he might well receive money from other sources. For example, the PSR noted that Ball has prevailed upon women to send him money while he was in county jail by "represent[ing] to each woman that he loved her." In just one four-and-a-half-month span in 2022, he received $11,750 from three different women,

along with another $1400 from his wife. The PSR also revealed that his wife owns a house worth nearly $200,000, a car worth nearly $25,000, and a business. We have held that property owned jointly or by a defendant's spouse can be relevant when determining a defendant's ability to pay. *See Wesely*, 96 F.4th at 1048; *see also United States v. Totaro*, 91 F.4th 1263, 1266 (8th Cir. 2024). Despite the charges against him, Ball reported that his relationship with his wife was "good," that she "remains supportive," and that they speak daily. It's not much of a stretch to think that she or other women might continue to send Ball money, significantly reducing or even eliminating the debt from these assessments.

In further support of his inability to pay, Ball observes that he has a court-appointed attorney. But as we've explained, one "may be indigent for purposes of appointing counsel and, at the same time, may be non-indigent for purposes of the JVTA special assessment." *See United States v. Rhodes*, 828 F. App'x 342, 343 (8th Cir. 2020) (unpublished per curiam) (citing *Kelley*, 861 F.3d at 801). We see no plain error here.

Affirmed.

_____